IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GIANNA MELONE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   25 C 5445 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| NICHOLE BONNET-MOONCOTCH a/k/a Niki | ) | |
| Moon, individually and NIKI MOON SALON, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case involves an alleged Little (Beauty) Shop of Horrors.   According to plaintiff Gianna Melone, defendant Nichole Bonnet-Mooncotch and the hair salon that she owns, defendant Niki Moon Salon, LLC (collectively, "defendants"): hired plaintiff and other young women as beautician assistants; pressured them into signing an agreement to engage in allegedly $5,000 worth of training with the proviso that if they were fired or quit before finishing their training, they would have to repay the cost of training; and then made it impossible for them to complete the training.   As a result, plaintiff alleges, she was "coerced into" providing labor for fear of legal and financial ruin.   Her complaint alleges five counts: one count each against Bonnet-Mooncotch (Count I) and Niki Moon Salon (Count III) under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), for violations of the Trafficking Victims Protection Act of 2000 ("TVPA"), 18 U.S.C. § 1589; one count each against Bonnet-Mooncotch (Count II) and Niki Moon Salon (Count IV) under the Illinois Trafficking Victims Protection Act ("ITVPA"), 740 ILCS 128/15, for violations of Illinois law against involuntary servitude, 720 ILCS 5/10-9; and one count against Niki Moon Salon (Count V) for

violating the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq.

Defendants move to dismiss all five counts for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiff opposes. For the following reasons, the court denies the motion.

## BACKGROUND

### Plaintiff's Factual Allegations

Plaintiff alleges the following facts in her complaint, which are taken as true in resolving defendants' motion. Alam v. Miller Brewing Co., 709 F.3d 662, 665-66 (7th Cir. 2013). Bonnet-Mooncotch owns Niki Moon Salon, which is located in Naperville, Illinois. Niki Moon Salon holds itself out as a hair salon that offers beautician services. It hires hair stylists directly out of high school as beautician assistants, many of whom are "women in their late teens or early 20s with little or no prior professional experience in beautician services and who aim to learn the beautician trade."

In April 2023, plaintiff, who also resides in Illinois, started working for Niki Moon Salon. At the time, she was 19 years old and had recently graduated from high school. Several months later, plaintiff and other assistants were presented with, and were "required to sign," "a document styled 'Employee Training and Reimbursement Agreement'" (the "Agreement"). Paragraph 3 of the Agreement "indicated that if the 'employee is terminated, whether voluntarily or involuntarily within one calendar year of completion or employee fails to complete the training,'" the employee agrees to repay the cost of the training. (Quoting the Agreement). Plaintiff was also given "training materials which indicated that the training program would last for about a year"—a representation that Bonnet-Mooncotch also repeated to plaintiff. But in all

2

events, the "'training' program would be concluded at the sole discretion of [Bonnet-Mooncotch]."

After two years of employment, plaintiff "still had not . . . completed her so-called 'training,' and there was no end in sight."  Indeed, "[t]here was no test, dated program, or other ability for [plaintiff] to complete the training program; only Defendants determined when, if ever, the 'training program' was complete."  Worse still, defendants "actively prohibited [plaintiff]'s completion of its training program" by "indefinitely extending it, and disallowing her from complying with the" Agreement.

All the while, Bonnet-Mooncotch "regularly reminded" plaintiff and her colleagues about the Agreement's repayment provision, telling plaintiff that Bonnet-Mooncotch "had the best attorneys in Chicago" and that "if I have to fire you or you quit you owe me $5,000."  "On three separate occasions, [plaintiff] told [Bonnet-Mooncotch] that she was unhappy with [her] job and her employment, and on each of those occasions, she was told . . . to 'not forget about your contract,'" and "[o]n one of those occasions, she was explicitly [told] 'don't forget, you'll owe me $5,000 if you leave.'"  "On another occasion, [plaintiff] shared that she felt she was being bullied by some of the other staff, and it made her not want to come into work, to which [Bonnet-Mooncotch] stated, 'Well, you're still in a contract, so . . . .'"  And after one of the beautician assistants quit, Bonnet-Mooncotch "called a meeting" to discuss the matter, where she explained to plaintiff and the other assistants that she had told the departing assistant: "too bad, you signed a contract, and if you think you're going to get out of it, you're not."  Bonnet-Mooncotch also reiterated at the meeting that her lawyers were "strong."

So although plaintiff wanted to quit, she was "too frightened to" do so because she believed that she would have to pay defendants $5,000 "that she did not have." She was, in other words, "coerced into" providing labor "out of fear of legal process and financial harm."

But eventually plaintiff did quit. And one "business day" later, defendants' attorney "sent a demand letter to attorneys for Plaintiff demanding immediate payment within 14 days of $4,248.60."

### Plaintiff's Five Counts

Based on the above allegations, plaintiff filed this lawsuit and asserts five counts. In Counts I and III, plaintiff alleges that Bonnet-Mooncotch and Niki Moon Salon each violated the TVPA (18 U.S.C. § 1589) by obtaining "services through threats of serious harm and abuse of legal process," such that plaintiff "was compelled to continue performing labor and services . . . for nearly two years despite abusive conditions and low pay." Among other things, defendants: "compelled" plaintiff "to sign [the Agreement] on her first day of training program, which contained a $5,000 penalty provision for termination before completion of training"; "repeatedly threatened" to enforce the penalty provision, "stating they had 'the best attorneys in Chicago' and that 'if I have to fire you or you quit, you owe me $5,000'"; failed to allow plaintiff to "complete the purported 'training' [after] nearly two years of employment"; "used the threat of serious financial harm to prevent" plaintiff from quitting; "engaged in abuse of legal process by threatening to use civil litigation for purposes not intended by law, specifically to coerce continued labor from" plaintiff; and "implemented a scheme designed to cause [plaintiff] to

believe she would suffer serious financial harm if she" quit.   Because defendants violate section 1589, plaintiff alleges, defendants are in turn civilly liable under the TVPRA (18 U.S.C. § 1595).

In Counts II and IV, plaintiff alleges that, based on these same actions, Bonnet-Mooncotch and Niki Moon Salon also violated Illinois law forbidding involuntary servitude under 720 ILCS 5/10-9.   Plaintiff therefore alleges that defendants are civilly liable under the ITVPA, 740 ILCS 128/15.

In Count V, plaintiff alleges that Niki Moon Salon violated the ICFA, 815 ILCS 505/1 et seq., by engaging in unfair and deceptive practices.   According to plaintiff, Niki Moon Salon marketed, sold, and financed "a purported 'training program' to [plaintiff] as a product with specific value ($5,000), thus creating a consumer credit transaction and debtor-creditor relationship with [plaintiff] under false and deceptive pretenses."   In particular, Niki Moon Salon: "deceptively marketed and sold to [plaintiff] a 'training program' represented to have substantial value ($5,000), when in fact [it] had little or no market value"; "misrepresented the duration of the training program, stating it would last approximately one year, when in fact Defendant deliberately ensured the program remained incomplete after nearly two years"; "created a financing arrangement through the [Agreement] that was intended to trap [plaintiff] in a cycle of ongoing debt and servitude, constituting an unfair practice"; "concealed that the true purpose of the [Agreement] was not to provide valuable training but to secure . . . continued labor through financial coercion"; and "engaged in unfair practices by extending the training indefinitely while threatening financial penalties if" plaintiff quit.

## DISCUSSION

Defendants have moved to dismiss all five counts in the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim under Rule 12(b)(6) challenges the sufficiency of the complaint. See Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of a claim's basis and must be facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id. at 679 (cleaned up).

"In reviewing the sufficiency of a complaint under th[is] plausibility standard," the court "accept[s] the well-pleaded facts in the complaint as true" but "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Alam, 709 F.3d at 665-66 (citation omitted). While this standard does not require "detailed factual allegations," a complaint that merely "tenders naked assertions devoid of further factual enhancement" is insufficient and fails to properly state a claim for relief. Iqbal, 556 U.S. at 678 (cleaned up); see also Zablocki v. Merchants Credit Guide Co., 968 F.3d 620, 623 (7th Cir. 2020) (on motion to dismiss the court "need not accept as true statements of law or unsupported conclusory factual allegations" (citation omitted)).

6

In short, the "plaintiff must present a story that holds together"—with "sufficient details to make the plaintiff['s] account one that *could* have happened and, if it did happen, states a claim cognizable under the governing law." Taylor v. Salvation Army Nat'l Corp., 110 F.4th 1017, 1028 (7th Cir. 2024) (cleaned up) (emphasis in original).

## Counts I & III

Plaintiff asserts Counts I and III against Bonnet-Mooncotch and Niki Moon Salon, respectively, under the TVPRA, 18 U.S.C. § 1595(a), based on defendants allegedly having violated the TVPA, 18 U.S.C. § 1589. Congress passed the TVPA: "[t]o combat trafficking in persons, especially into the sex trade, slavery, and involuntary servitude[;] to reauthorize certain Federal programs to prevent violence against women[;] and for other purposes." VICTIMS OF TRAFFICKING AND VIOLENCE PROTECTION ACT OF 2000, PL 106–386, Oct. 28, 2000, 114 Stat 1464. The legislation created criminal offenses for, among other things, forced labor. See 18 U.S.C. § 1589(a).

In particular, subsection (a) of section 1589 "forbids anyone from 'knowingly providing or obtaining the labor or services of any person:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.'"

Taylor, 110 F.4th at 1029 (cleaned up) (quoting 18 U.S.C. § 1589(a)). Subsection (c) then defines two phrases used in subsection (a):

(1) The term "abuse or threatened abuse of law or legal process" [in (a)(3)] means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

(2) The term "serious harm" [in (a)(2) and (a)(4)] means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c).

A few years after Congress passed the TVPA, Congress passed the TVPRA to provide a "[c]ivil remedy" to victims of violations of the TVPA. Id. § 1595(a). Under section 1595, an "individual who is a victim of a violation of this chapter"—which would include a violation under section 1589—"may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)," and "may recover damages and reasonable attorneys fees." Id.

To state a civil claim here based on forced labor under section 1589, then, plaintiff "must plead adequately that [defendants]: obtained [plaintiff's] labor or services; by the unlawful coercive means forbidden by the statute; and that [they] did so knowingly." Taylor, 110 F.4th at 1030-31. Defendants here argue that plaintiff has failed to do so in its complaint for at least five reasons.

First, they contend, plaintiff does not assert that she was required to either work at Niki Moon Salon or to participate in the additional training. Second, the consequences of her failing to complete training were "laid out" in the Agreement. Third, the alleged "threat of 'serious

8

harm'" is "little more than Niki Moon Salon reminding" plaintiff of the consequences of her breaching the Agreement and is therefore not "sufficiently serious" under section 1589.   Fourth, the same "reminders" also fail to amount to an "abuse or threatened abuse of law or legal process" under section 1589.   According to defendants, such threats "fall far below" what defendants view is a level-of-seriousness "threshold" set by cases in which courts have found that a threat to report an individual's immigration violations was sufficiently coercive.   And fifth, plaintiff has failed to allege facts from which the court can infer that defendants "intended that their policies would be perceived by [plaintiff] in a way to unlawfully obtain [her] labor[ ]." (Citation omitted).   For these reasons, defendants conclude, plaintiff "has failed to plausibly allege that Defendants obtained her labor or services in violation of the TVPA," and thus Counts I and III must be dismissed.

The court disagrees.   First, the complaint plausibly alleges that defendants "obtained [plaintiff's] labor or services."   Taylor, 110 F.4th at 1030.   Defendants do not argue otherwise.

Second, the complaint plausibly alleges that defendants did so by "unlawful coercive means forbidden by the statute."   Id. at 1030-31.   The complaint alleges that defendants threatened plaintiff with serious harm and the abuse of the legal process.   See 18 U.S.C. § 1589(a)(2)-(4).   Again, the statute broadly defines "serious harm" as "any harm . . . including . . . financial . . . that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to . . . continue performing labor or services in order to avoid incurring that harm."   Id. § 1589(c)(2).   And it broadly defines "abuse or threatened abuse of law or legal process" as "the threatened use of . . . legal process . . . in any manner or for any purpose for which the law was not designed, in order

to exert pressure . . . to cause [a] person to take some action or refrain from taking some action."
Id. § 1589(c)(1).

Plaintiff's complaint here plausibly alleges both types of coercive means.   It alleges that after plaintiff signed the Agreement, defendants "actively prohibited" her from completing the "training program"—a program which could "be concluded [only] at the sole discretion of" Bonnet-Mooncotch, which had "no test, dated program, or other ability for [plaintiff] to complete" it, and which plaintiff was told would last for one year but which she had still not completed after two years.   According to the complaint, defendants did so by "indefinitely extending" the training program, and by "disallowing her from complying with the" Agreement. It further alleges that defendants "repeatedly threatened" to enforce the penalty provision in the Agreement and "bragged" about making examples of other "young beauticians"—"stating [that] they had 'the best attorneys in Chicago' and that 'if I have to fire you or you quit, you owe me $5,000.'"   It also alleges that plaintiff's complaints to Bonnet-Mooncotch that she was unhappy and that she did not want to come to work were met with threats that she would owe $5,000 under the contract.   Defendants, the complaint alleges, thereby "used the threat of serious financial harm" and the threat of enforcing the Agreement "to prevent" plaintiff from quitting. And the complaint also alleges that plaintiff was earning "low pay" and did not have the $5,000 to pay the penalty.

Although these may not be "detailed factual allegations," they are more than just "naked assertions," Iqbal, 556 U.S. at 678 (cleaned up), and provide the defendant with fair notice of the claim's basis.   They, in other words, "give enough detail about the subject-matter of the case to present a story that holds together."   Ali v. Khan, 336 F. Supp. 3d 901, 909 (N.D. Ill. 2018)

10

(citation omitted) (denying motion to dismiss a § 1589(a) forced labor claim even though the "allegations [we]re disappointingly vague"). And they also allege the type of facts that have been found to support "serious harm" for purposes of section 1589(a)(2). See Baldia v. RN Express Staffing Registry LLC, 633 F. Supp. 3d 693, 705 (S.D.N.Y. 2022) ("Courts in this District have found liquidated damages provisions to constitute 'serious harm' for purposes of 18 U.S.C. § 1589(a)(2) where defendants actually threatened to enforce the applicable provision."); Javier v. Beck, No. 13-CV-2926 (WHP), 2014 WL 3058456, at *6 (S.D.N.Y. July 3, 2014) (finding serious harm where the defendants "repeatedly threatened [the plaintiff] that he would owe the defendants $15,000 [through a confession of judgment] if he . . . left the defendants' employ").

Defendants may well ultimately persuade a factfinder that having to pay the $5,000 was not a "sufficiently serious" harm. But that is a factual issue that will have to be explored after discovery. At the pleading stage, it is at least plausible that a reasonable person in plaintiff's shoes—a recent high-school graduate with no professional experience—would be compelled to continue performing work to avoid having to pay $5,000 she did not have. And while in some contexts a $5,000 repayment penalty might be a "legitimate consequence," and a "remind[er]" about that penalty might be a "legitimate warning," see Taylor, 110 F.4th at 1031 (explaining that the Salvation Army's "remind[ing] the participants that leaving [its] program results in the cessation of the benefits of the program" was a "legitimate warning" about a "legitimate consequence" that did not support a "forced labor claim" (citation omitted)), they cannot be so considered here. That is because, putting aside that the "consequence" here was a penalty—not simply the cessation of benefits, as in Taylor—plaintiff alleges that the underlying training to

11

which the consequence and warnings were tethered could never legitimately be completed. So

the warning and consequence were in fact illegitimate and can thus support a forced labor claim

here.

The court is also not convinced that threatening to use immigration law is the only way a

defendant can cognizably threaten to abuse the legal process, as defendants suggest. And

indeed, courts have found that "threats of litigation can also amount to a 'threatened abuse of law

or legal process' for purposes of" section 1589(a)(3). See Baldia, 633 F. Supp. 3d at 709

(citation omitted). The fact is, the statute is broadly worded, and the complaint here plausibly

alleges that, by simultaneously prohibiting plaintiff from completing the training and threatening

plaintiff with the penalty, defendants used the legal process "in a[ ] manner [and] for a[ ] purpose

for which the law was not designed, in order to exert pressure . . . to cause [plaintiff] to . . .

refrain from taking some action"—namely, quitting. 18 U.S.C. § 1589(c)(1).

Finally, the complaint plausibly alleges that defendants acted "knowingly" here. Taylor,

110 F.4th at 1031. Again, the complaint alleges that defendants designed a scheme by creating

a training program that had no objective standard and that could be considered completed only

on defendants say so, and then "bragged" about making examples of young beauticians who left

the salon and "repeatedly threatened" to have defendants' "strong" lawyers enforce the

Agreement—all to keep plaintiff and the others from quitting. The complaint thus "contains . . .

allegations that plausibly indicate that" defendants knew what they were doing and "intended"

for plaintiff to "believe that serious harm would befall" her if she "refused to work." Id.

In sum, plaintiff has plausibly pleaded that defendants violated the TVPA, 18 U.S.C. § 1589, and that defendants are therefore civilly liable under the TVPRA, 18 U.S.C. § 1595(a). The court accordingly denies defendants' motion to dismiss Counts I and III.

## Counts II & IV

Plaintiff asserts Counts II and IV against Bonnet-Mooncotch and Niki Moon Salon, respectively, under the ITVPA, 740 ILCS 128/15, based on violations of Illinois law against involuntary servitude, 720 ILCS 5/10-9. "The ITVPA is like the TVPA." Ruderman v. McHenry Cnty., No. 3:22-CV-50115, 2023 WL 130496, at *3 (N.D. Ill. Jan. 9, 2023). Under it, "[a] victim of . . . involuntary servitude . . . may bring an action in civil court . . . ." 740 ILCS 128/15(a). "Involuntary servitude" is in turn defined in 720 ILCS 5/10-9, which states in relevant part that "[a] person commits involuntary servitude when he or she knowingly subjects, attempts to subject, or engages in a conspiracy to subject another person to labor or services obtained or maintained through any of the following means, or any combination of these means": "abuses or threatens to abuse the law or legal process"; "uses intimidation, or exerts financial control over any person"; or "uses any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform the labor or services, that person or another person would suffer serious harm or physical restraint." 720 ILCS 5/10-9(b)(3) & (5)-(6). And, like 18 U.S.C. § 1589, subsection (a) of section 5/10-9 defines "serious harm" as: "any harm . . . including . . . financial . . . that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." Id. § 5/10-9(a)(7.5).

13

The court finds that plaintiff has plausibly pleaded a claim under the ITVPA for the same reasons discussed above for the substantially similar federal claims. Indeed, the court's analysis above on the plausibility of the allegations related to "serious harm," to "abuse of legal process," and to defendants' knowledge and intent for the claims under the federal statutes applies with equal force to the allegations for the claims under the Illinois statutes—which both parties concede are nearly identical. The court therefore denies defendants' motion to dismiss Counts II and IV.

### Count V

In Count V, plaintiff alleges that Niki Moon Salon violated the ICFA, 815 ILCS 505/1 et seq. The ICFA "protect[s] consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." Vanzant v. Hill's Pet Nutrition, Inc., 934 F.3d 730, 736 (7th Cir. 2019) (quoting Robinson v. Toyota Motor Credit Corp., 775 N.E.2d 951, 960 (2002)). "Deceptive or unfair practices include any 'misrepresentation or the concealment, suppression or omission of any material fact.'" Id. (quoting 815 ILCS 505/2). To state a claim under the ICFA, plaintiff must allege "that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." Id. Deceptive conduct and unfair practice are "separate categories; deceptive conduct is distinct from unfair conduct." Id. at 738. "A claim under the [ICFA] may be premised on either (or both), but the two categories have different pleading standards." Id. When, as here, some portion of "the claim rests on allegations of deceptive conduct, then [Fed. R. Civ. P.] 9(b) applies and the plaintiff must plead with particularity the circumstances constituting fraud." Id.

14

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b)'s particularity requirement for the fraud aspect "ordinarily" requires describing the "who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co., 631 F.3d 436, 441-42 (7th Cir. 2011) (cleaned up). Such detail "is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." Id. at 442. But the precise level of detail that must be "included in that first paragraph . . . may vary on the facts of a given case." Id.

To that end, the "who, what, where" formulation "is not meant to suggest that every possible who, what, where, when, or how within the alleged factual circumstances must be stated with particularity; . . . it is meant only to distill the specific inquiries under Rule 9(b)." Sava v. 21St Century Spirits, LLC, No. 22 C 6083, 2024 WL 3161625, at *11 (N.D. Ill. June 25, 2024). Those are: "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Id. at *5 (citation omitted).

Rule 9(b), moreover, applies to allegations—not claims. "[S]o only those allegations sounding in fraud are held to the rule's 'particularity' requirement; all other allegations must satisfy only *Twombly* and *Iqbal*'s 'plausibility' requirement, even if those allegations support a claim where fraud is an essential element." Id. (citing Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth, 99 F.4th 928, 944-45 (7th Cir. 2024)). Thus, "when an allegation

15

comes up short" under Rule 9(b), "the court simply disregards the allegation and does not *automatically* dismiss the claim." Id. at *6 (emphasis in original).

Defendants argue here that plaintiff's ICFA-related allegations "fall short of stating a cause of action under the [ICFA] with the specificity and particularity required." According to defendants, plaintiff: "makes general and conclusory allegations that Niki Moon Salon marketed, sold, and financed a training program that had little to no value"; "asserts that Niki Moon 'misrepresented the duration of the training program,' . . . but does not offer any specificity regarding the alleged misrepresentation"; and "generally asserts that Niki Moon Salon 'created a financing arrangement through the [Agreement] that was intended to trap [plaintiff] in a cycle of ongoing debt and servitude,' . . . but fails to allege any facts supporting the conclusory allegation, including how the $5,000 financing arrangement 'was intended to trap' her and, more importantly, how it trapped her."

The court finds that plaintiff has pleaded its allegations of fraud with sufficient particularity. As an initial matter, plaintiff's allegation that Niki Moon Salon "created a financing arrangement through the [Agreement]," intending to "trap" plaintiff in a cycle of servitude is not a fraud allegation. To the contrary, plaintiff expressly alleges that this conduct "constitut[es] an unfair practice." Again, though, "deceptive conduct is distinct from unfair conduct." Vanzant, 934 F.3d at 738. And "because fraud is not a required element" of an unfair conduct allegation, "Rule 9(b)'s heightened pleading standard does not apply." Id. at 739. This financing-arrangement allegation thus need not be pleaded with particularity. Contrary to defendants' suggestion, then, "general[ ] assert[ions]" are enough. And as

16

explained above as to the involuntary servitude claims, plaintiff has pleaded more than enough to support the allegation here.

Turning to plaintiff's allegations that do in fact sound in fraud, and that therefore must be pleaded with particularity, they are: that Niki Moon Salon "misrepresented the duration of the training program, stating it would last approximately one year, when in fact Defendant deliberately ensured the program remained incomplete after nearly two years"; that Niki Moon Salon "deceptively marketed and sold to [plaintiff] a 'training program' represented to have substantial value ($5,000), when in fact [it] had little or no market value"; and that Niki Moon Salon "concealed that the true purpose of the [Agreement] was not to provide valuable training but to secure [plaintiff]'s continued labor through financial coercion."

As for the training-duration assertion, the court disagrees with defendants that plaintiff has not pleaded with enough specificity. Plaintiff has pleaded the who (Bonnet-Mooncotch); the what (misrepresentations that the program would take no more than one year); the when (at hiring and on October 23, 2023, when signing the Agreement); the where (at Niki Moon Salon); and the how (statements in training materials and representations from Bonnet-Mooncotch).

The court also disagrees with defendants that the $5,000-of-value assertion is lacking in particularity. Plaintiff has pleaded the who (Niki Moon Salon)[1]; the what (misrepresentations that the program had $5,000 value); the when (when signing the Agreement); the where (at Niki Moon Salon); and the how (by misrepresenting in statements in the Agreement, which plaintiff

---

[1] Courts routinely find that allegations that specify the corporate defendant as the "who" meet Rule 9(b)'s particularity requirement. See, e.g., Geske v. PNY Techs., Inc., 503 F. Supp. 3d 687, 707 (N.D. Ill. 2020) (allegations identified corporate defendant "PNY" as the who); Womick v. Kroger Co., No. 21-CV-00574-NJR, 2022 WL 673095, at *4 (S.D. Ill. Mar. 7, 2022) (allegations identified Kroger as "the 'who'").

signed).   Under the facts of this case, plaintiff has pleaded these two fraud allegations with particularity.

Finally, as to plaintiff's allegation that Niki Moon Salon "concealed that the true purpose of the [Agreement] was . . . to secure [plaintiff]'s continued labor through financial coercion," the court notes that defendants do not challenge this allegation for lacking particularity.   For good reason: "In a fraudulent concealment claim there is no who, what, when, where or how the fraudulent statement was made, since the essence of the claim is that facts material to the transaction that should have been disclosed were not disclosed by any person at any time, in any place or in any manner."   Fed. Deposit Ins. Corp. v. Patel, No. 19-CV-6917, 2020 WL 6681348, at *2 (N.D. Ill. Nov. 12, 2020) (citation omitted).

In short, the court finds that plaintiff has pleaded its fraud allegations with sufficient particularity under Rule 9(b).   Because defendants do not meaningfully challenge plaintiff's ICFA claim on any other basis, the court denies defendants' motion to dismiss Count V for failure to state a claim.

## <u>CONCLUSION</u>

For the above reasons, the court denies defendants' motion to dismiss for failure to state a claim [14]. Defendants are directed to file their answer by December 3, 2025. The parties are directed to file a joint status report using this court's form on or before December 23, 2025.

So ordered.

ENTER:

**Robert W. Gettleman
United States District Judge**

DATE:     **November 12, 2025**

19